# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARY KASH, | : | Case No. 3:11-cv-44 |
| Plaintiff, | : | District Judge Walter H. Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION[1] THAT:
## (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THE CASE BE CLOSED

This is a Social Security appeal brought pursuant to 42 U.S.C. §§ 405(g),1383(c)(3). At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff Mary Kash ("Plaintiff") was "not disabled" and therefore unentitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB"). *See* Administrative Transcript ("Tr.") 793.

The case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's Memorandum in Opposition (doc. 12), the Plaintiff's Reply (doc. 13), and the administrative record.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed a SSI application with a protective filing date of July 24, 2006, and a DIB application with a protective filing date of July 31, 2006, asserting she has been under a "disability" since July 15, 2006. Doc. 6-5 at PAGEID 151. Plaintiff claims she is disabled due to "disc disease, fibromyalgia, scoliosis [and] depression" Doc. 6-6 at PAGEID 170.

Following initial administrative denials of her application, Plaintiff received a hearing before ALJ Amelia Lombardo on April 27, 2009. Doc. 6-2 at PAGEID 74-97. On June 30, 2009, the ALJ issued a written decision, finding Plaintiff "not disabled" and therefore denying her SSI and DIB claims. *Id.* at PAGEID 60-73.

Specifically, the ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since July 15 2006, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971, *et seq.*).

3. The claimant has the following severe impairments: lumbar and cervical degenerative disc disease, scoliosis, fibromyalgia, obesity, and a bipolar disorder (20 CFR 404.1520(c) and 416.920 (c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416. 967(a) except that she is limited to frequent climbing of ramps and stairs, balance, and kneel, occasional stoop

and crouch, and cannot crawl or climb ladders, ramps, or scaffolds; would need to shift her position between sitting and standing every hour in order to maintain comfort; and is limited to unskilled that is considered low stress, meaning no assembly line production quotas, and which involves only minimal contact with the general public.[2]

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 9, 1966 and was 40 years old, which is defined as a younger individual aged 18-44, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 15, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

*Id.*

---

[2]The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Sedentary work "involves lifting no more than 10 pounds at a time " and "a certain amount of walking and standing is often necessary." *Id.* § 404.1567(a). Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." *Id.* § 404.1567(c). Heavy work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(d). Very heavy work "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying objects weighing up to 50 pounds." *Id.* § 404.1567(e).

The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's non-disability finding the final administrative decision of the Commissioner. Doc. 6-2 at PAGEID 53. Plaintiff then filed this appeal, arguing that the ALJ erred by rejecting her treating physicians' opinions that she is unable to work. *See* doc. 8 at PAGEID 669-74.

### B. Plaintiff's Vocational Profile and Testimony

Plaintiff was 40 years old on her alleged disability onset date, and thus considered a "younger individual." *See* 20 C.F.R. §§ 404.1563, 416.963. Plaintiff completed the twelfth grade. Doc. 6-2 at PAGEID 78. She has past relevant work as an industrial cleaner and a housekeeping cleaner. *Id.* at PAGEID 93.

Before the ALJ, Plaintiff testified that she has degenerative disc disease and fibromyalgia. *Id.* at PAGEID 80-81. As a result, she experiences neck and back pain, which radiates into her legs. *Id.* She testified that she takes pain medication and receives injections once every three months.[3] *Id.* at PAGEID 80-81. She further testified that she has visited the emergency room due to her pain. *Id.* at PAGEID 90. On a ten-point pain scale, her pain is usually between eight and nine without medication, and a four with medication. *Id.* at PAGEID 82.

Plaintiff testified that she is most comfortable sitting or lying down. *Id.* Plaintiff estimated that she can walk for thirty minutes without a break, and stand for twenty minutes without a break. *Id.* at PAGEID82-83. Plaintiff also testified that she does not have any difficulty sitting as long as she can get up "after an hour or so," and can lift ten pounds. *Id.* at PAGEID 83.

---

[3]It appears that Plaintiff is prescribed Hydrocodone for pain and Gabapentin for fibromyalgia symptoms. *See* doc. 6-6 at PAGEID 225.

In addition, Plaintiff testified that she suffers from bipolar disorder and depression. *Id.* at PAGEID 83. She testified that she experiences anxiety, stress, mood swings, and crying spells two to three times per month. *Id.* at PAGEID 85, 90. Further, she testified that she has difficulty maintaining attention and with reading comprehension. *Id.* at PAGEID 90-91. For the past three years, she attended therapy once every eight weeks. *Id.* at PAGEID 83. Plaintiff testified that she takes medication which helps control her mental impairments, but also makes her drowsy.[4] *See id.* at PAGEID 84.

Vocational Expert Vanessa Harris, Ph. D. testified at the administrative hearing. Doc. 6-2 at PAGEID. Based on Plaintiff's age, education, work experience, and the ALJ's description of Plaintiff's RFC, she testified that Plaintiff would be able to perform the requirements of three positions: nut sorter, table worker and bench hand. *Id.* at PAGEID 94. The Vocational Expert estimated there were 3500 such jobs in the Dayton regional economy. *Id.*

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

---

[4] It appears that Dr. Fitz, her psychiatrist, prescribes Plaintiff the following medications: Abilify for her bipolar disorder; Carbamazepine to help control her moods; and Amitriptyline for her depression. *See* doc. 6-6 at PAGEID 225.

5

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Id.* Thus, the Commissioner has a "'zone of choice' within which he can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 763, 773 (6th Cir. 2001).

The second inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "[e]ven if supported by substantial evidence . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen,* 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB or SSI, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423 (a) & (d), 1382c(a). The definition of the term "disability" is the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* A DIB and SSI claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### III. ANALYSIS

As a preliminary note, Plaintiff's pertinent medical records have been adequately summarized in the parties' briefs, *see* doc. 8, at PAGEID 66168-53; doc. 12, at PAGEID 687-92, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff contends that the ALJ improperly rejected the disability findings of Kevin Sharrett, M.D. and Thomas Brunsman, M.D. -- her primary care physicians from the same family practice. *See* doc. 8 at PAGEID 669-75. Upon a full and careful review of the administrative record, however, the Court finds the ALJ's evaluation of Plaintiff's treating physicians to be supported by substantial evidence. Thus, Plaintiff's assignment of error is not well taken.

While the medical opinions of treating physicians are generally entitled to greater weight than those of one-time or non-examining consulting physicians, a treating physician's conclusory statement -- that the claimant is disabled -- is not determinative of the ultimate issue. *Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir. 1986). Rather, to be entitled to controlling or substantial weight, the treating physician must supply sufficient medical data to substantiate that opinion. *See Bogle v. Sullivan,* 998 F.2d 342, 347-48 (6th Cir. 1993). Accordingly, the ALJ may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997).

As an initial note, the only dispositive issue is whether Plaintiff's mental limitations, in combination with her physical limitations, render her "disabled." Based on Plaintiff's own testimony at the administrative hearing, she can meet the physical requirements of performing sedentary work with the ALJ's additional restrictions. She testified that she can lift ten pounds and does not have difficulty sitting as long as she can "get up after an hour or so." Doc. 6-2 at PAGEID 83. The ALJ incorporated these physical limitations into the RFC finding by limiting Plaintiff to sedentary work that would allow her to "shift positions between sitting and standing every hour in order to maintain comfort." Doc. 6-2 at PAGEID 66-67.

The ALJ also considered Plaintiff's mental impairments, in making the RFC finding, by limiting Plaintiff to low stress work, "meaning no assembly line production quotas, and which involves only minimal contact with the general public." *Id.* Further, based on the ALJ's inquiry, the Vocational Expert testified that an additional work restriction -- of minimal contact with the general public -- would not change the number of jobs available to Plaintiff. *Id*. at PAGEID 94.

8

Nonetheless, Plaintiff contends that her treating physicians' opinions are entitled to controlling or substantial weight because the physicians considered the combination of her physical and mental impairments. Both disability opinions are in letter format. Neither doctor completed a medical form or otherwise specified Plaintiff's physical or mental limitations.

Dr. Sharrett's August 2006 letter states in its entirety: "[Plaintiff] suffers from Fibromyalgia, Depression and Anxiety. These conditions in combination are very debilitating to her. She is unable to hold down regular employment as a result. Please accept her application for disability benefits." *Id.* at PAGEID 426.

Dr. Brunsman's letter, dated January 8, 2008, reads in pertinent part:

> This letter is behalf of [Plaintiff], whom I have treated for the past 2 ½ years. [Plaintiff] has been diagnosed with fibromyalgia, scoliosis, depression, lumbar and cervical disc disease and hyperhidrosis. She has suffered from chronic pain and fatigue as a result.
> Although [Plaintiff] was diagnosed with fibromyalgia prior to my involvement, I have noted multiple tender points, upper chest bilaterally, upper sternal bilaterally, lower sternal bilaterally, posterior shoulder bilaterally, midline of neck as well as upper and lower Para spinal areas of cervical spine, bilateral upper extremity and lower extremity (thigh).
> Her symptoms of fibromyalgia which include the above multiple tender points, fatigue and depression have effected her to the point where she cannot maintain employment. She is unable to lift anything over 10-20lbs. She would not reliably be able to attend work or work a full shift.
> [Plaintiff's] other medical problems, in particular her scoliosis and degenerated disc disease further contribute to her disability.
> It is my opinion that [Plaintiff] has been motivated and attempted to work over the past several years but has not been able to sustain employment and generally this exacerbates the symptoms.

Doc. 6-8 at PAGEID 398.

In her written decision, the ALJ gave "good reasons"[5] why the opinions of Dr. Brunsman and Dr. Sharrett were not entitled to controlling or significant weight:

> While both Dr. Sharrett and Dr. Brunsman are treating sources within the meaning of the Social Security Act, their opinions are not well-supported by medically-acceptable laboratory and diagnostic techniques and their opinions are inconsistent with other substantial evidence in the case record. As noted above, fibromyalgia, while causing some functional limitations, is not generally considered a disabling impairment within the medical community. In fact, the claimant's lack of exercise or physical therapy program likely contributes to her allegations of fatigue and joint pain. Further, objective and clinical findings reveal no evidence of nerve root compromise or other indicia of marked functional limitation which would support a finding that the claimant cannot sustain physical activity on a regular and continuing basis. In addition, neither physician is a mental health professional, nor do their treatment notes document clinical findings consistent with marked emotional impairment. In fact, their opinions directly conflict with the opinion of Dr. Olson, a mental health professional, who performed an actual mental status evaluation, as opposed to simply reporting the claimant's subjective complaints. Neither opinion is well-supported by the objective or clinical findings of record and appear to rely solely on the claimant's subjective allegations, which as shown above, are nor credible to the extent that the purport to establish a condition of disability within the meaning of the Social Security Act. Therefore, because the opinions of Dr. Sharrett and Dr. Brunsman are not well-supported by the objective and clinical evidence of record, and because they conflict with other substantial evidence in the case record, they are not entitled to controlling, deferential, or even significant weight as to the claimant's functional capacity and disability status.

Doc. 6-2 at PAGEID 71.

The ALJ's analysis, and decision not to give controlling or substantial weight to the opinions of Dr. Brunsman and Dr. Sharrett, is supported by substantial evidence. Having carefully reviewed the record, the Court agrees that there is insufficient medical data to substantiate their opinions. Dr. Brunsman and Dr. Sharrett's treatment records consist primarily of Plaintiff's subjective complaints

---

[5] Under Social Security regulations, the ALJ is required to give "good reasons" for not deferring to a treating physician's opinion. *Blakley v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406-07 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)).

and contain very few clinical findings or references to objective medical evidence.[6] Doc. 6-8 at PAGEID 390-462; Doc. 6-9 at PAGEID 579-82, 632-333. Further, the limited objective medical evidence in the record -- for example, MRIs -- only substantiates the doctors' opinions regarding Plaintiff's physical limitations. There are no clinical findings regarding her emotional impairments and, as noted above, the determinative issue is whether Plaintiff's mental limitations, in combination with her physical limitations, render her "disabled." Accordingly, the ALJ properly disregarded the treating physicians opinions because they were conclusory and not supported by clinical findings and objective medical evidence. *See Walters*, 127 F.3d at 530.

In sum, the Court concludes that the ALJ had good reasons, supported by substantial evidence, for not deferring to the opinions of Dr. Brunsman and Dr. Sharrett. The ALJ acted within the "zone of choice" and should therefore be affirmed. *Buxton*, 246 F.3d at 73.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiffs only assignment of error to be unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found supported by substantial evidence, and **AFFIRMED;** and

2. This case be **CLOSED.**


January 23, 2012                                                               s/ **Michael J. Newman**
                                                                                                 United States Magistrate Judge

---

[6] It appears that most of the medical records are from Dr. Brunsman.

# **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).